[No. A138463. First Dist., Div. Four. Jan. 31, 2017.]

RINCON EV REALTY LLC et al., Plaintiffs and Appellants, v.
CP III RINCON TOWERS, INC., et al., Defendants and Respondents.

**4**

**COUNSEL**

Boies, Schiller & Flexner, Jeremy M. Goldman, Christine Y. Wong, Nora K.C. Flum; Locke Lord, Kathleen Smalley; Boersch Shapiro and David Shapiro for Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Barry W. Lee, Lenard G. Weiss, Ann M. Heimberger, Christian E. Baker, Christopher A. Rheinheimer; and Jerome B. Falk, Jr., for Defendants and Respondents.

Hunton & Williams, Y. Anna Suh, Patrick L. Robson and Joseph J. Saltarelli for nonparty Bank of America.

## OPINION

**STREETER, J.**—Plaintiffs Rincon EV Realty LLC, Rincon ET Realty LLC and Rincon Residential Towers LLC borrowed $110 million in 2007 from Bear Stearns Commercial Mortgage, Inc. (Bear Stearns), to finance the purchase of Rincon Towers, a San Francisco apartment complex (the Property). In 2010, after plaintiffs failed to repay the loan and after changes in the ownership of the loan, defendant CP III Rincon Towers, Inc. (CP III), purchased the Property at a nonjudicial foreclosure sale. Plaintiffs sued CP III and seven other entities who were involved in administering the loan, unsuccessful workout negotiations, and the eventual foreclosure sale, alleging various causes of action, some legal (breach of contract, fraud, slander of title, trade secret misappropriation), and some equitable (unfair competition, to set aside the foreclosure sale, and for an accounting). After a bench trial, the trial court rejected all of these claims in a detailed and thoughtful statement of decision.

On appeal from the ensuing judgment, plaintiffs contend (1) the trial court erred by striking their demand for a jury trial, (2) a discovery referee appointed by the court made erroneous rulings that were prejudicial and denied plaintiffs a fair trial, (3) the court erred in analyzing plaintiffs' unfair competition claim, (4) the foreclosure sale is void because CP III did not own the loan and had no right to foreclose, and (5) prejudicial irregularities in the foreclosure sale require that it be set aside. In the published portion of this opinion, we conclude the court erred by striking plaintiffs' jury demand, which applied only to their legal causes of action; in the unpublished portion of the opinion, we reject plaintiffs' remaining appellate challenges. As a result, we reverse the judgment and remand for further proceedings as to the legal causes of action, while affirming as to the equitable causes of action.

## I. BACKGROUND

In June 2007, plaintiffs purchased the Property for approximately $143 million. Plaintiffs' investor sponsor is Richard Cohen. At the time of trial, Cohen and his business entities had a real estate portfolio worth something in the range of $1.5 billion to $2 billion.

Plaintiffs financed their purchase of the Property in part by borrowing $110 million from Bear Stearns (the Loan, or the Rincon Loan). The Loan was evidenced by a promissory note (the Note) and secured by a deed of trust on the Property. The governing loan agreement (the Loan Agreement) specified the Loan was due two years later, in June 2009, unless plaintiffs exercised an option to extend the maturity date of the Loan for another year, to June 2010. The Loan Agreement provided that, to exercise the option, plaintiffs would

have to satisfy certain conditions, including submission of an appraisal showing the principal amount of the Loan did not exceed 72 percent of the fair market value of the Property. The appraisal was to be prepared in a manner consistent with the methodology used for the appraisal delivered in connection with the origination of the loan in 2007.

After the collapse of Bear Stearns in 2008, Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 (the Maiden Lane Trust, or the Trust) acquired the Loan. The Trust was established by the Federal Reserve Bank of New York (FRBNY) to facilitate the acquisition of Bear Stearns by JP Morgan Chase (JP Morgan). The Trust acquired the Rincon Loan as part of a portfolio of commercial mortgage loans that JP Morgan did not want to acquire. Maiden Lane LLC was the beneficiary of the Maiden Lane Trust, and U.S. Bank National Association (USB) was the trustee. FRBNY was the sole and managing member of Maiden Lane LLC; a trust and master servicing agreement (Trust Agreement) designates FRBNY as the "Controlling Party" of the Trust. BlackRock Financial Management, Inc. (BlackRock), was the operating advisor to the Trust. The Trust Agreement designates LaSalle Bank National Association (LaSalle) as the custodian and Bank of America, N.A. (Bank of America) as the master servicer.[1]

Plaintiffs did not repay the Loan by the June 2009 maturity date (and, indeed, never repaid any portion of the principal amount of the Loan). In 2009, plaintiffs took the position they were entitled under the Loan Agreement to a one-year extension of the maturity date to June 2010. The Maiden Lane Trust disagreed, telling plaintiffs they had not met the conditions for an extension and were in default. In 2009, the Trust, through BlackRock, engaged in negotiations with plaintiffs about a possible modification of the Loan. In connection with these negotiations, plaintiffs and the Trust entered a prenegotiation agreement in March 2009. The negotiations were unsuccessful.

Also in 2009, the Maiden Lane Trust began marketing the Loan to third parties through Eastdil Secured (Eastdil). Eastdil's auction process resulted in the selection (in January 2010) of Carmel Partners as the highest bidder.[2] In February 2010, plaintiffs filed the present lawsuit and recorded a notice of pendency of action (lis pendens) against the Property.

On April 16, 2010, CP III closed on the purchase and acquired the Loan from the Maiden Lane Trust. On June 15, 2010 (after the maturity date that

---

[1] FRBNY, BlackRock, LaSalle and Bank of America are not parties, although we granted Bank of America leave to file a brief in this court addressing a single, narrow issue.

[2] In its statement of decision, the trial court stated: " 'Carmel Partners' is the trade name under which several of the Defendants do business—CP III Rincon Towers, Inc. ('CP III'); Carmel Partners, Inc.; Carmel Partners, LLC; Carmel Management, LLC; and CP Investment Fund III, L.P. CP III is the entity that purchased the Loan and foreclosed on the collateral."

would have applied if plaintiffs had been entitled to the one-year extension), CP III initiated nonjudicial foreclosure proceedings by recording a notice of default. CP III acquired the Property at a foreclosure sale on October 12, 2010, with a $73 million credit bid. Plaintiffs' efforts to enjoin the foreclosure were unsuccessful.

Plaintiffs' fifth amended complaint, the operative complaint at trial, asserted the following causes of action: (1) breach of the Loan Agreement, (2) breach of a cash management agreement (Cash Management Agreement) entered into by plaintiffs and Bear Stearns concurrently with the Loan Agreement, (3) breach of the prenegotiation agreement entered into by plaintiffs and the Maiden Lane Trust in March 2009, (4) fraud, (5) to set aside the foreclosure, (6) unfair competition (Bus. & Prof. Code, § 17200 et seq.), (7) slander of title, (8) violation of the Uniform Trade Secrets Act (UTSA) (Civ. Code, § 3426 et seq.), and (9) accounting. The complaint named as defendants (1) CP III, (2) other Carmel Partners entities (Carmel Partners, Inc.; Carmel Partners, LLC; Carmel Management, LLC; and Carmel Partners Investment Fund III, L.P.), (3) USB as trustee for the Maiden Lane Trust, (4) the Maiden Lane Trust, and (5) Maiden Lane LLC (collectively, defendants). After a bench trial, the court entered judgment in favor of defendants on all claims.[3]

## II. DISCUSSION

### A. *Plaintiffs' Jury Demand*

#### 1. *Additional Background*

The Loan Agreement and the Cash Management Agreement each include a New York choice-of-law provision, printed in boldface type and capital letters. The choice-of-law provision states in part: "**Governing Law. [¶] . . . THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY**

---

[3] Throughout most of the proceedings in this case, there were collateral proceedings in New York. CP III sued Cohen in federal court in New York on June 14, 2010, seeking to recover under a guaranty he signed in connection with the Loan Agreement. (*CP III Rincon Towers, Inc. v. Cohen* (S.D.N.Y. 2014) 13 F.Supp.3d 307, 309, 316, judg. vacated and cause remanded for further proceedings (2d Cir., 2016) 666 Fed. Appx. 46, 55.) In April 2014, the federal district court granted summary judgment in favor of Cohen. (*CP III Rincon Towers, Inc. v. Cohen*, at pp. 309, 325.) The Second Circuit Court of Appeals later vacated the district court's judgment and remanded for further proceedings. (*CP III Rincon Towers, Inc. v. Cohen, supra*, 666 Fed. Appx. at p. 55.) In addition to these federal proceedings, there were some subpoena enforcement proceedings in New York state court arising out of discovery in this case.

BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA . . . ."[4]

The choice-of-law provisions also specify that plaintiffs waive any claim that California law, or the law of any state other than New York, governs the parties' agreements: "**TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS, AND THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**"

The Loan Agreement and the Cash Management Agreement also specify that the parties waive the right to trial by jury. The jury waiver provision, which also is set forth in boldface type and capital letters, states: "**Trial by Jury.** [¶] **BORROWER AND LENDER HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY**

---

[4] The Loan Agreement states an exception to the applicability of New York law, specifying that "the provisions for the creation, perfection, and enforcement of the lien and security interest created pursuant hereto and pursuant to the other loan documents shall be governed by and construed according to the law of the state in which the property is located . . . ."

JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BOR-
ROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDI-
VIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH
THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.
BORROWER AND LENDER ARE HEREBY AUTHORIZED TO FILE
A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CON-
CLUSIVE EVIDENCE OF THIS WAIVER."

The prenegotiation agreement also contains a New York choice-of-law
provision and a broad contractual jury trial waiver.

According to briefs submitted by the parties to the trial court and the
court's subsequent order addressing this issue, plaintiffs' fourth amended
complaint (filed in Dec. 2011) included a demand for jury trial of all causes
of action triable by jury.[5] In January 2012, defendants filed a motion to strike
plaintiffs' jury demand. Defendants argued the jury waiver provisions in the
parties' agreements were enforceable under New York law, which applied
pursuant to the choice-of-law provisions in those agreements. Defendants also
contended some of plaintiffs' claims (the claims to set aside the foreclosure,
for unfair competition and for an accounting) were not triable by jury in any
event.

In their opposition to defendants' motion, plaintiffs specified they sought a
jury trial on their claims for breach of contract, fraud, slander of title, and
violation of the UTSA. Plaintiffs argued they were entitled to a jury trial on
those claims because (1) under applicable conflict-of-laws principles, Califor-
nia law applied notwithstanding the New York choice-of-law provisions in
the governing contracts, and (2) under California law, the contractual jury
waivers were unenforceable. Plaintiffs stated that their remaining causes of
action (to set aside the foreclosure, for unfair competition and for an
accounting) were "equitable in nature," and that plaintiffs did not seek a jury
trial for those claims.

After holding a hearing, the trial court issued a written order granting
defendants' motion to strike the jury demand. In its order, the court noted
plaintiffs sought a jury trial on "their legal causes of action for breach of
contract, fraud, slander of title, and violations of [the UTSA]." (Fn. omitted.)
Applying the framework set forth in *Nedlloyd Lines B.V. v. Superior Court*
(1992) 3 Cal.4th 459 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*), the
court concluded the choice-of-law provisions in the parties' contracts were
enforceable, and dictated the application of New York law and thus the
enforcement of the contractual jury waivers.

---

[5] The fourth amended complaint is not in the record on appeal. In their motion to strike the
jury demand, defendants quoted the fourth amended complaint as including the statement,
" 'Plaintiffs hereby demand trial by jury of all causes of action triable of right by a jury.' "

Plaintiffs subsequently filed a fifth amended complaint, which included the same claims that were at issue when defendants moved to strike plaintiffs' jury demand. After a bench trial, the court issued a detailed statement of decision addressing all of plaintiffs' claims and subsequently entered judgment in favor of defendants on all claims.

## 2. *The Court Erred by Striking Plaintiffs' Jury Demand*

■ In determining whether to enforce contractual choice-of-law provisions, we apply the principles set forth in section 187 of the Restatement Second of Conflict of Laws (the Restatement). (*Nedlloyd, supra*, 3 Cal.4th at pp. 464–465.) In *Nedlloyd*, our Supreme Court explained that, under the Restatement approach, a court must first determine "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (*Nedlloyd, supra*, 3 Cal.4th at p. 466, fns. omitted.) Where the relevant facts are undisputed, the determination whether a contractual choice-of-law provision supplants the law that would otherwise apply is a legal question that we review de novo. (*Brack v. Omni Loan Co., Ltd.* (2008) 164 Cal.App.4th 1312, 1320 [80 Cal.Rptr.3d 275].)

Applying the first step of the *Nedlloyd* test, the trial court correctly found (and plaintiffs do not dispute) that New York has a substantial relationship to the parties and their transaction. The Loan Agreement and the Cash Management Agreement state that each of the plaintiffs is a Delaware limited liability company with its "principal place of business" in New York. (See *ABF Capital Corp. v. Grove Properties Co.* (2005) 126 Cal.App.4th 204, 217 [23 Cal.Rptr.3d 803] (*Grove Properties*); Rest., § 187, com. f, pp. 566–567 [party's principal place of business in chosen state establishes substantial relationship].) In the Loan Agreement and the Cash Management Agreement, the parties agreed New York "has a substantial relationship to the parties and the underlying transaction embodied" by each agreement. The agreements

were negotiated in New York; the Loan made pursuant to the agreements was made and accepted in New York; and the proceeds of the Loan were disbursed in New York.

■ Under New York law, predispute contractual jury trial waivers generally are enforceable. (*Barclays Bank of New York, N.A. v. Heady Electric Co., Inc.* (1991) 174 A.D.2d 963, 964 [571 N.Y.S.2d 650].) Plaintiffs argue, however, that the trial court erred by applying New York law to determine the enforceability of the jury waiver provisions in the parties' contracts. Relying on the *Nedlloyd* framework, plaintiffs contend that application of New York law would be contrary to a fundamental policy of California, and that California has a materially greater interest than New York in determining the enforceability of the jury waiver provisions. (See *Nedlloyd, supra*, 3 Cal.4th at p. 466.) Plaintiffs suggest alternatively that the choice-of-law provisions do not or cannot apply to this question; plaintiffs contend the contractual choice of New York law extends only to "substantive" issues, while the enforceability of the jury waivers is a "procedural" issue that is governed by the law of the forum notwithstanding the choice-of-law clauses.

Assuming without deciding the choice-of-law provisions in the parties' agreements direct the application of New York law to determine the enforceability of the jury waiver provisions in those agreements,[6] we conclude that, under *Nedlloyd*, the choice of New York law is not enforceable, and the validity of the jury waivers is governed by California law. We therefore need not address plaintiffs' alternative contention that the question of the validity of the jury waivers is outside the scope of the choice-of-law provisions (or falls within a category of questions that can never be the subject of an effective contractual choice of law).

■ Turning to the question whether California has a fundamental policy concerning contractual waivers of the right to jury trial at the second step of the *Nedlloyd* analysis, we note that article I, section 16 of the California Constitution states the right to trial by jury is "an inviolate right," and in "a civil cause," any waiver of that right must occur by the consent of the parties "expressed as prescribed by statute." Section 631 of the Code of Civil Procedure,[7] which implements the constitutional provision, states the right to trial by jury is "inviolate," and may be waived in civil cases only as specified in subdivision (f) of its provisions. (§ 631, subd. (a).) Subdivision (f) of section 631 enumerates six methods by which the right to jury trial may be forfeited or waived, including failure to appear at trial, failure to demand jury trial within a required time frame after the case is set for trial, failure to pay

---

[6] The choice-of-law provisions state questions of "validity" of the agreements are to be governed by New York law.

[7] All statutory references are to the Code of Civil Procedure unless otherwise stated.

required fees, oral consent in open court, or written consent filed with the clerk or the court. In *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 950, 956–958, 961, 967 [32 Cal.Rptr.3d 5, 116 P.3d 479] (*Grafton*), our Supreme Court held that, because the waiver methods specified in section 631 are exclusive—and because all of them apply only after a lawsuit has been filed—a predispute agreement specifying that any lawsuit between the contracting parties will be adjudicated in a court trial, rather than a jury trial, is unenforceable. We think the same analysis applies here.

■ "[I]t is for the Legislature, not th[e] court[s], to determine whether, and under what circumstances, a predispute waiver of jury trial will be enforceable in this state." (*Grafton, supra*, 36 Cal.4th at p. 967.) As the *Grafton* court explained, the Legislature has expressly authorized agreements to submit future disputes to arbitration or to a referee. (§§ 638, 1281; *Grafton, supra*, 36 Cal.4th at pp. 960–961.) But neither section 631 nor any other statute authorizes predispute waivers of the right to jury trial by parties who submit their disputes to a judicial forum. (*Grafton, supra*, 36 Cal.4th at pp. 951, 956, 961.) Such waivers therefore are not enforceable. (*Id.* at p. 967.) In so holding, the *Grafton* court interpreted and applied California constitutional and statutory provisions governing waiver of the right to jury trial. Although *Grafton* did not involve a choice-of-law question, the Supreme Court founded its analysis, as we do here, on the premise that the right to jury trial in California is "fundamental," "inviolate," and " 'sacred in its character.' " (*Id.* at pp. 951, 956; accord, *Cohill v. Nationwide Auto Service* (1993) 16 Cal.App.4th 696, 699 [19 Cal.Rptr.2d 924] [" 'The right to trial by jury is a basic and fundamental part of our system of jurisprudence.' "].)

After identifying this fundamental right, the court went further, explaining that, under *Exline v. Smith* (1855) 5 Cal. 112 (*Exline*) and subsequent cases, "the rules under which the parties to a lawsuit may waive a jury trial must be prescribed by the Legislature, which is without power to delegate to the courts the responsibility of determining the circumstances under which such a waiver may be permitted." (*Grafton, supra*, 36 Cal.4th at p. 952; accord, *id.* at p. 956 ["Our decision in the *Exline* case was based in part upon our understanding that the framers of the Constitution intended to restrict to the Legislature the power and obligation to establish rules for jury waivers, because '[t]he right of trial by jury is too sacred in its character to be frittered away or committed to the uncontrolled caprice of every judge or magistrate in the State.' "].)[8] Because California statutes specify how and under what

---

[8] As the foundation for this point, the *Grafton* court quoted extensively from Justice Simons and his First District, Division Five colleagues in the Court of Appeal opinion under review in *Grafton*, tracing the pertinent history. *Exline* is the centerpiece of that history. " 'In *Exline* the Supreme Court considered a jury waiver that arose under a court rule adopted pursuant to the statute (§ 179 of the Cal. Civil Practice Act). The Supreme Court concluded that our

precise circumstances parties may waive or forfeit the right to jury trial—by taking or failing to take certain steps after litigation has begun (§ 631, subd. (f)), or by entering an agreement to submit future disputes to arbitration or to a referee (§§ 638, 1281)—the *Grafton* court took the view that courts may not invade the Legislature's exclusive domain by enforcing waivers outside the prescribed statutory scheme. In our view, that is the essential teaching of the case. Pointing to "firmly rooted" constitutional history, *Grafton* concluded that, " 'unless the Legislature prescribes a jury waiver method, we cannot enforce it.' " (*Grafton, supra,* 36 Cal.4th at pp. 953, 956.)

Other portions of the *Grafton* court's analysis underscore the importance of the rule that the Legislature retains sole authority to determine permissible methods of jury waiver. The court rejected a claim that it was "anomalous" to prohibit a "knowing, voluntary, written" predispute waiver of the right to jury trial, given that section 631 permits parties to forfeit the right through their own negligence, such as by failing to file a timely demand for jury trial (§ 631, subd. (f)(4)), or by failing to deposit required fees in a timely manner (§ 631, subd. (f)(5), (6)). (*Grafton, supra,* 36 Cal.4th at pp. 963–964.) This result is not anomalous, the court pointed out, because the forfeiture provisions at issue "were created by the *Legislature.* They form part of a considered procedural scheme intended to create a balanced adversarial system and a fair system of public administration of justice—a system that can be altered by legislation after due deliberation." (*Id.* at p. 964.) In addition, while acknowledging that a majority of state and federal jurisdictions permit predispute waiver of the right to jury trial, the *Grafton* court explained that any argument for adoption of this approach in California should be addressed to the Legislature, which can evaluate any associated benefits or potential problems with the approach and develop any appropriate safeguards that should accompany its adoption.[9] (*Grafton,* at pp. 965–966.) Each of these additional considerations, above and beyond the pertinent constitutional

---

Constitution forbids the creation of judicial rules of waiver, even if such rules are promulgated pursuant to a legislative delegation of such power to the judiciary. The court interpreted the phrase "prescribed by law" within article I, section 3, of the California Constitution of 1849, to mean that the Legislature, alone, had the power to determine the circumstances under which a jury could be waived. "The Constitution has imposed the power as well as the necessity upon the Legislature, of determining in what cases a jury trial may be waived, which cannot be transferred or delegated to any other department of Government. The words 'prescribed by law,' look to actual legislation upon the subject, and in no just sense can be extended to a permission of the exercise of this power to others. [¶] . . . [T]he power to 'prescribe by law' is legislative and cannot be conferred on judicial officers . . . ." ' (*Exline, supra,* 5 Cal. at pp. 112–113.)" (*Grafton, supra,* 36 Cal.4th at p. 953.)

[9] Defendants note that Justice Chin, in his concurring opinion in *Grafton,* urged the Legislature to authorize predispute jury waivers. (*Grafton, supra,* 36 Cal.4th at pp. 968–970 (conc. opn. of Chin, J.).) But Justice Chin, who also joined the majority opinion in *Grafton,* agreed that the Legislature, not the courts, must evaluate the appropriateness of such a course. (*Id.* at pp. 968, 970.)

history, is equally relevant here and serves to reinforce our conclusion that application of New York law to permit enforcement of the predispute contractual jury waivers at issue in this case (i.e., permitting waiver by a method not expressly authorized by the Legislature) would be contrary to fundamental California policy.

We come, then, to the last leg of the choice-of-law analysis—whether California has a materially greater interest than New York in " 'the determination of the particular issue,' " i.e., the enforceability of the jury waiver provisions in the parties' agreements. (*Nedlloyd, supra,* 3 Cal.4th at p. 466.) The trial court concluded that, even assuming enforcement of a predispute contractual jury waiver would be contrary to a fundamental California policy, California does not have a materially greater interest than New York in determining the enforceability of the jury waivers at issue here. The court noted that, although the property that is the subject matter of this litigation is in California, "all parties to the agreements at issue were sophisticated commercial or business entities." The court further noted New York's extensive contacts with the parties and the underlying loan transaction—"[a]ll parties to the original loan were domiciled in New York," "[t]he contracts at issue were negotiated and signed in New York, and the loan was disbursed in New York." Finally, the court noted that, although the Carmel Partners entity defendants (who were not signatories to the original agreements) are based in California, they sought to enforce the New York choice-of-law provisions and the jury waivers. The court thus concluded: "New York's interest in protecting the bargained for expectations of sophisticated commercial entities to contracts negotiated, signed, and performed in New York outweighs California's limited interest in a jury trial simply because the property is located here."

■ We see this issue differently. In our view, the relevant "interest" of California for purposes of the *Nedlloyd* analysis is not solely an interest in whether this dispute is resolved by a jury trial. Instead, California has an interest in enforcing its policy that only the Legislature can determine the permissible methods for waiving the right to jury trial when parties submit their civil disputes to a court in this state for resolution. A major theme running throughout defendants' argument on this issue, adopted by the trial court in its rationale, is that all of the parties involved are highly sophisticated commercial entities. The point is undeniable on this record, but on a faithful application of the principles announced in *Grafton* distinctions providing different levels of protection to different types of litigants must be drawn by the Legislature, not by courts examining the characteristics of the parties on a case-by-case basis. (*Grafton, supra,* 36 Cal.4th at pp. 965–966.) In fact, *Grafton* addressed this very argument when it observed that, if the Legislature were inclined to create a sophisticated parties exemption, it might wish to develop any number of limitations, while "keeping in mind potentially

divergent concerns faced by business entities negotiating commercial contracts, on the one hand, and consumers presented with form contracts, on the other." (*Id.* at p. 966.) We take this point as a recognition, with which we agree, that, institutionally, courts are not well equipped to craft such limitations in case-by-case adjudication.

Because the policy at stake in this case "form[s] part of a considered procedural scheme intended to create a balanced adversarial system and a fair system of public administration of justice," we conclude that California, as the forum for adjudication of this dispute, has the paramount interest here. (*Grafton, supra,* 36 Cal.4th at p. 964; see *Grove Properties, supra,* 126 Cal.App.4th at pp. 217, 223 [California, as forum state, had substantially greater interest than chosen state (New York) in determination of a "procedural issue," i.e., the reciprocity of contractual attorney fees under Civ. Code, § 1717].)[10] We recognize, as did the trial court, that New York has an interest in protecting the expectations of parties who enter contracts in New York. (See *Guardian Savings & Loan Assn. v. MD Associates* (1998) 64 Cal.App.4th 309, 323 [75 Cal.Rptr.2d 151] (*Guardian*).) But when those parties come to a California courtroom, this state has a considerable interest in how the proceeding is conducted. Like every other California litigant, each party to this case is entitled to rely upon California's commitment to protection of fundamental rights within the civil justice system as a whole. Taking a step back from this particular case, as we must in evaluating the relevant policy interests, the constitutionally protected and legislatively declared policy we perceive here may be viewed as but one expression of the priority we place upon access to civil justice on the same terms for everyone, with no exceptions for the sophisticated or the wealthy. At stake here is a fundamental right for all litigants (i.e., those who are parties to civil lawsuits in California courts, see § 631, subd. (a) [constitutional right to jury trial "shall be preserved to *the parties* inviolate" (italics added)]), not just a right for consumers or those needing protection from contractual overreaching (see Cal. Const., art. I, § 16; *Grove Properties, supra,* 126 Cal.App.4th at p. 218 [reciprocal attorney fee statute was designed for the benefit of all litigants, not just unsophisticated ones]).

---

[10] Holding to the contrary is *ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 839 [30 Cal.Rptr.3d 588] (*Berglass*), where the court concluded California did not have a materially greater interest than New York in determining the availability of reciprocal attorney fees (which are available under California law pursuant to Civ. Code, § 1717). But the *Berglass* court never addressed whether Civil Code section 1717 reflected a fundamental California policy for purposes of the *Nedlloyd* analysis, because it determined New York law would have applied even if the parties had not included a choice-of-law provision in their contract. (*Berglass, supra,* 130 Cal.App.4th at p. 837.) Here, in contrast, we have concluded California's policy on jury waivers is fundamental.

Nor does the out-of-state residency of some of the parties change the calculus when we shift our focus specifically to this case. Defendants insist that, because plaintiffs are New York residents, California has "no interest in protecting *them* from the consequences" of the contractual jury waivers at issue. Defendants also emphasize that some of the events giving rise to plaintiffs' claims (such as the negotiation and disbursement of the Loan) occurred in New York. Of course, the parties remain entitled to have their contract dispute adjudicated under New York law, and to that extent defendants overstate the importance of the jury waiver in securing the legitimate contractual expectations they and plaintiffs have. California's policy as to the permissibility of jury waivers, in any event, is not focused solely on the protection of California *residents* (or persons whose claims rest on events occurring entirely in California). Instead, as we have emphasized, it protects the rights of California *litigants*, and is a core aspect of how California has chosen to adjudicate cases within its civil justice system as a whole.

*Guardian, supra*, 64 Cal.App.4th 309, which the trial court cited and which defendants cite on appeal, does not persuade us to the contrary. We note, to begin with, that *Guardian* predates *Grafton*. In that case, a judicial foreclosure action involving commercial property located in California, the trial court entered a judgment imposing personal liability on a Texas joint venture. (*Guardian, supra*, 64 Cal.App.4th at pp. 314–315.) The appellants there contended section 580b applied and prohibited the entry of a deficiency judgment, but the trial court enforced a contractual choice-of-law provision adopting Texas law, which imposed no similar restriction. (*Guardian, supra*, 64 Cal.App.4th at p. 315.)

The Court of Appeal affirmed, holding that, while section 580b reflected a fundamental California policy (*Guardian, supra*, 64 Cal.App.4th at pp. 320–322), California's interest in enforcing that policy was not materially greater than Texas's interest in protecting the expectations of the contracting parties, in light of the nature of the transaction in that case (*id.* at pp. 322–323). The court concluded that, because the transaction at issue did not involve the sale of a home and because the parties to the contract were sophisticated Texas domiciliaries, the policies underlying section 580b— including homeowner protection, equitable risk allocation, and "avoiding the aggravation of an economic downturn in a depression"—had limited, if any, application in the commercial setting involved there. (*Guardian, supra*, 64 Cal.App.4th at pp. 318–320, 322–323.) In contrast, Texas had a strong interest in protecting the contractual expectations of Texas domiciliaries. (*Id.* at p. 323.) In these circumstances, the court held enforcement of the Texas choice-of-law provision was proper, but noted "the issue is close" and limited its holding to the facts of the case before it. (*Ibid.*) The court was careful to limit its holding to "the specific circumstances of the present case." (*Ibid.*)

Essentially, the *Guardian* court came to the conclusion that, while the policy of antideficiency protection reflected in section 580b is fundamental, that policy was not directly implicated in a complex commercial real estate transaction that had been negotiated with no expectation California law would apply. While there is without doubt some similarity to the issue presented here because of the emphasis the *Guardian* court placed on the involvement of sophisticated out-of-state parties who could take care of themselves, what is key to understand about the case is that the public policy involved was all but irrelevant to the transaction at issue there. By contrast, the California policy at stake in this case—protection of the right to jury trial for litigants in California courts unless they waive the right in a manner prescribed by the Legislature—is not only directly implicated, but is central to California's system for resolving civil cases, for all litigants. (*Grafton, supra,* 36 Cal.4th at pp. 952–953 [" 'The California Constitution, as originally adopted in 1849, set out the right to a jury trial in the strongest possible terms: " '[T]he right of trial by jury *shall be secured to all,* and remain inviolate for ever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law.' " ' " (italics added)].) Indeed, the fact that this policy applies to all California litigants, universally, is itself part of the fundamental policy implicated here.

Also distinguishable is *Discover Bank v. Superior Court* (2005) 134 Cal.App.4th 886, 889, 894–895 [36 Cal.Rptr.3d 456] (*Discover Bank*), another case that had no occasion to consider the implications of *Grafton.* In *Discover Bank,* the Court of Appeal, applying a choice-of-law provision in a cardholder agreement, held a class action waiver enforceable under Delaware law. In *Discover Bank,* the plaintiff (a California resident who sought to represent a nationwide class of consumers) sought to invalidate the class action waiver by urging the application of California law concerning unconscionability, which the court stated "is part of the substantive law of contracts." (*Id.* at pp. 894–895, 897.) The plaintiff did not argue that California procedural law concerning class actions or related matters provided a basis for invalidating the waiver. (*Id.* at p. 897.) In that context, the court concluded California did not have a materially greater interest than Delaware in the application of its law (i.e., California's unconscionability standards), in part because all of the plaintiff's claims were brought under Delaware law and because he sought to represent a nationwide class of consumers (not just California consumers), leading the court to observe that "California has no greater interest in protecting other states' consumers than other states have in protecting California's." (*Id.* at pp. 894–895, 897.)

■ The reasoning in *Discover Bank* is inapplicable here. In this case, in contrast to *Discover Bank,* plaintiffs do not seek to invalidate the jury waivers by invoking general principles of substantive contract law. Instead, they contend the jury waivers run afoul of California constitutional and statutory

provisions that address a specific procedural question, i.e., which cases will be tried by jury in California courts. Those protected, by definition, are litigants in the California courts. Were the venue changed in this lawsuit to New York—we note that no party ever sought to bring that about—the jury trial right the parties enjoy in our courts would not travel with them. Accordingly, for the reasons we have discussed, California, as the forum state, has a materially greater interest than New York in determining the enforceability of the jury waivers at issue here, and under California law, the waivers are not enforceable. The trial court therefore erred by striking plaintiffs' jury demand.

### 3. *The Error Requires a Partial Reversal of the Judgment*

Plaintiffs contend the trial court's error in striking the jury demand (1) is reversible error per se and does not require a showing of prejudice, and (2) requires reversal of the judgment as to all of plaintiffs' claims, including their equitable claims (for which plaintiffs did not seek a jury trial). We agree with plaintiffs' first argument but not their second.

"Denial of the right to a jury trial is reversible error per se, and no showing of prejudice is required of a party who lost at trial." (*Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 493 [189 Cal.Rptr.3d 259].) Accordingly, when a trial court erroneously deprives a party of a jury trial on a cause of action the party was entitled to submit to a jury, reversal of the judgment on that cause of action is required. (*Ibid.*)

We are not persuaded by defendants' argument that a showing of prejudice should be required. In support of their position, defendants cite cases they contend show a "split of authority" on this issue. But the cases cited by defendants addressed situations in which a trial court declined to relieve a party from a prior waiver of jury trial. (See § 631, subd. (g); *McIntosh v. Bowman* (1984) 151 Cal.App.3d 357, 363 [198 Cal.Rptr. 533]; *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 653 [141 Cal.Rptr. 604]; *Glogau v. Hagan* (1951) 107 Cal.App.2d 313, 318–319 [237 P.2d 329].) "Whatever the merits of these cases on their facts, they have no application here, where the trial court did not abuse its discretion in refusing to permit the . . . withdraw[al] [of a] prior [jury] waiver . . . , but denied the [plaintiffs their] constitutional right to such a trial in the first instance." (*Martin v. County of Los Angeles* (1996) 51 Cal.App.4th 688, 698 [59 Cal.Rptr.2d 303] (*Martin*).) It is true that in the prior waiver context when a party appeals after losing a court trial, rather than seeking immediate writ review of the order denying relief from waiver,

some courts have held to the contrary on the question of prejudice.[11] (*McIntosh v. Bowman, supra,* 151 Cal.App.3d at p. 363; *Glogau v. Hagan, supra,* 107 Cal.App.2d at pp. 318–319; but see *Boal v. Price Waterhouse & Co.* (1985) 165 Cal.App.3d 806, 809 [212 Cal.Rptr. 42].) But where, as here, no valid waiver has occurred and a trial court has "denied [a party] its constitutional right to [jury] trial in the first instance," the error is structural, reversible per se. (*Martin, supra,* 51 Cal.App.4th at p. 698; accord, *Selby Constructors v. McCarthy* (1979) 91 Cal.App.3d 517, 527 [154 Cal.Rptr. 164]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2015) ¶ 2:248, p. 2-46; *id.,* ¶ 2:342, p. 2-67.)

■ We disagree, however, with plaintiffs' assertion that the trial court's error in striking the jury demand requires reversal of the judgment as to all claims, including the equitable claims. While a litigant in a civil action generally has a constitutional right to jury trial on "legal" causes of action, there is no such right with respect to "equitable" causes of action (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 155–156 [85 Cal.Rptr.3d 337]), or "equitable" remedies (*Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 408–409 [191 Cal.Rptr.3d 340]). It therefore was not error for the court to decide the equitable claims here. And the erroneous denial of a jury trial on other claims provides no basis for reversing the judgment on the equitable claims. (See *Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc., supra,* 238 Cal.App.4th at pp. 477–478, 493 [reversing judgment against defendant solely as to "legal" claim for express indemnity based on denial of defendant's right to jury trial as to that claim, while affirming judgment against defendant on equitable subrogation claim].)

■ With little elaboration, plaintiffs contend in their opening brief that jury findings in their favor on certain contractual issues would support favorable findings on their equitable claims. Contrary to plaintiffs' suggestion, however, they were not entitled to have a jury determine the legal issues before the trial court determined the equitable ones. To the contrary, as we explained in *Hoopes v. Dolan, supra,* 168 Cal.App.4th at p. 157, "[i]t is well established in California jurisprudence that '[t]he court may decide the equitable issues first, and this decision may result in factual and legal findings that effectively dispose of the legal claims.' [Citation.] This [D]istrict Court of Appeal has observed that the 'better practice' is for 'the trial court [to]

---

[11] We note a case pending before our Supreme Court presents the question whether the Court of Appeal erred by reviewing a party's right to a jury by writ of mandate rather than appeal. (*Shaw v. Superior Court* (2014), review granted Nov. 12, 2014, S221530, argument scheduled for Feb. 7, 2017.)

determine the equitable issues before submitting the legal ones to the jury.' " We decline to reverse the trial court's judgment on the equitable claims based on speculation that, if the trial court had not stricken plaintiffs' jury demand, (1) it would have departed from the " 'better practice' " of trying the equitable claims and issues first, and would instead have submitted the legal issues to the jury first, and (2) the jury would have made findings favorable to plaintiffs that would have caused the court to reach a different result on the equitable claims.

In their reply brief, plaintiffs place a new spin on their effort to persuade us to reverse on the equitable claims, suggesting that, if the court had not stricken their jury demand and had instead announced it would bifurcate the equitable and legal issues, they might have chosen to abandon some of the equitable claims to ensure they could present their legal claims to the jury. (See *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 [111 Cal.Rptr. 693, 517 P.2d 1157] [by waiving their claim for equitable relief, plaintiffs "made an election of remedies in order to secure a trial by jury"].) There is a gap in the logic. We fail to see how the possibility plaintiffs might have *dropped* some of their equitable claims is a basis for reversing the judgment on those claims and allowing plaintiffs another chance to pursue them.

We also note this is not a case in which a party was unfairly surprised by the court's resolution of certain claims or issues. (Cf. *Darbun Enterprises, Inc. v. San Fernando Community Hospital, supra*, 239 Cal.App.4th at pp. 411–412 [where plaintiff in breach of contract action sought both damages and the equitable remedy of specific performance, and trial court made misleading and inconsistent statements about whether it would decide the common issue of breach, the plaintiff did not have the opportunity to preserve its right to jury trial by abandoning its request for equitable relief].) In light of plaintiffs' own statement that they did not seek a jury trial on the equitable claims (and in light of the court's subsequent order striking the jury demand), plaintiffs could not have been surprised that the court resolved the equitable claims and issues.[12] The court's error in striking plaintiffs' demand for a jury trial on their legal claims thus does not require reversal of the judgment as to the equitable claims, including the claims to set aside the foreclosure and for unfair competition. (See *Raedeke v. Gibraltar Sav. & Loan*

---

[12] Defendants assert that, on remand, the trial court's previously entered judgment on the equitable claims would likely require the court to enter summary judgment for them on any remaining legal claims. Plaintiffs disagree, contending even the present judgment on the equitable claims would not eliminate their right to submit some issues to a jury. We need not address this issue, except to point out the fact we reverse in part for lack of an enforceable jury waiver does not mean plaintiffs are necessarily entitled to a jury trial on their remaining legal claims. On remand, defendants may submit to the trial court any section 437c motion or other form of dispositive motion they may wish to file. We express no view about whether the grounds relied upon by the trial court for rejecting any of plaintiffs' claims—equitable or legal—might justify granting such a motion.

*Assn., supra,* 10 Cal.3d at p. 671 ["An action to set aside a trust deed foreclosure is an equitable action and one in which the plaintiff ordinarily would have no right to jury trial."]; *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 284–285 [51 Cal.Rptr.3d 519] [cause of action for unfair competition in violation of Bus. & Prof. Code, § 17200 is equitable].)[13]

We will, however, reverse the judgment only as to the claims for which plaintiffs sought a jury trial, i.e., their claims for breach of contract, fraud, slander of title and violation of the UTSA. In moving to strike plaintiffs' jury demand as to those causes of action, defendants relied solely on the predispute jury waivers that we have held are unenforceable. And the trial court relied exclusively on the predispute jury waivers in granting the motion.

We do not hold plaintiffs are entitled to a jury trial on every issue raised in their six "legal" causes of action, some of which appear to present both legal and equitable issues. For example, although all six of these causes of action seek damages, three of them (the claims for breach of the Loan Agreement and the Cash Management Agreement and for violation of the UTSA) also seek equitable remedies (specific performance, a constructive trust, and an injunction) as to which there is no right to jury trial.[14] (See *Darbun Enterprises, Inc. v. San Fernando Community Hospital, supra,* 239 Cal.App.4th at p. 409; *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1485 [171 Cal.Rptr.3d 548].) In the event of a retrial, the trial court may determine which of the remaining claims and issues are equitable, and may determine the order in which the equitable and legal issues will be tried.

B., C.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

[13] In their reply brief, plaintiffs (citing *Selby Constructors v. McCarthy, supra,* 91 Cal.App.3d 517) suggest they may be entitled to a jury trial on some aspects of their fifth cause of action to set aside the foreclosure. Plaintiffs have waived or forfeited any such argument. As noted, plaintiffs expressly stated in the trial court that they did not seek a jury trial on this cause of action, and that it was an equitable claim.

[14] In the trial court, it appears plaintiffs elected to pursue damages, rather than equitable relief, as to these causes of action. (See *Walton v. Walton* (1995) 31 Cal.App.4th 277, 292–293 [36 Cal.Rptr.2d 901].) The portions of plaintiffs' posttrial briefs and the trial court's statement of decision addressing these claims focused on whether plaintiffs had established the elements of the causes of action and whether they had proven damages, rather than on whether they were entitled to the equitable remedies mentioned in the fifth amended complaint.

*See footnote, *ante,* page 1.

### III.  DISPOSITION

The judgment is reversed as to plaintiffs' claims for breach of contract, fraud, slander of title, and violation of the UTSA (the first, second, third, fourth, seventh and eighth causes of action in the fifth amended complaint) and the case is remanded for further proceedings consistent with this opinion as to those causes of action. The judgment is affirmed as to plaintiffs' claims to set aside the foreclosure sale, for unfair competition, and for an accounting (the fifth, sixth and ninth causes of action in the fifth amended complaint). The parties shall bear their own costs on appeal.

Reardon, Acting P. J., and Rivera, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 26, 2017, S040617. Chin, J., did not participate therein.